IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 93-7479

LAURA HOWELL LINTON, ET AL.,

Plaintiffs-Appellees,

versus

AIRBUS INDUSTRIE, ET AL.,

Defendants.

Consolidated with

MR. AND MRS. STAN MOSS,
INDIVIDUALLY AND AS
TEMPORARY ADMINISTRATORS
OF THE ESTATE OF ALISON
LESLIE MOSS.

Plaintiffs-Appellees,

versus

AIRBUS INDUSTRIE, ET AL.,

Defendants,

AIRBUS INDUSTRIE and
AEROFORMATION,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas

(August 16, 1994)

Before GOLDBERG, KING, and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Defendants-Appellants Airbus Industrie, G.I.E. ("Airbus") and its subsidiary, Aeroformation ("AeF"), (collectively "Airbus Defendants") were sued in state court. The Airbus Defendants removed this case to federal court, where they sought immunity from suit under the Foreign Sovereign Immunities Act ("FSIA").[1] Jurisdiction for this removal was based on two distinct grounds: diversity jurisdiction under 28 U.S.C. § 1332, and "federal question" jurisdiction under the FSIA and 28 U.S.C. §§ 1441 & 1330.

In an earlier order, the district court had concluded that the Airbus Defendants did not qualify as instrumentalities of foreign states. The Airbus Defendants immediately appealed that order, but in an unpublished opinion ("Airbus I")[2] we dismissed that appeal for lack of jurisdiction and remanded the case to the district court. On remand, the district court concluded that there was no diversity jurisdiction))hence no subject matter jurisdiction))and accordingly remanded the case to state court under 21 U.S.C. § 1447.

Once again the Airbus Defendants are before us seeking review, claiming, inter alia, that the FSIA order is an order that may be considered separate from the order to remand under the "separable order" doctrine; hence appellate review of the FSIA order is not

---

[1]Codified at 28 U.S.C. §§ 1602-11.

[2]Airbus Industrie v. Linton, No. 92-7564 (5th Cir. Feb. 24, 1993).

precluded by § 1447.  As explained below, however, the FSIA order is not "conclusive" and thus not a separable order under controlling jurisprudence.  Moreover, as the FSIA order will have no preclusive effect on state courts, we can find no injustice here that would warrant recalling our mandate in Airbus I so as to consider the merits of that order.

The Airbus Defendants also claim that we may review the remand order because the remand was erroneously based on a "post-removal" event, i.e., a stipulation that effectively made one of the plaintiffs "stateless," thereby destroying diversity jurisdiction. We conclude, however, that § 1447 interdicts our jurisdiction to review remands for lack of subject matter jurisdiction, even if such remands are erroneously based on post-removal events. Accordingly, this appeal is dismissed.

I

FACTS AND PROCEEDINGS

Two sets of plaintiffs sued, among others, the Airbus Defendants in two separate suits in a Texas state court for damages caused by a plane crash in India.  The Airbus Defendants removed these cases to federal court, where they were consolidated without objection into one case "for all purposes."  The Airbus Defendants asserted two independent bases for jurisdiction:  1) diversity jurisdiction under 28 U.S.C. § 1332,  and 2) "federal question" jurisdiction under the FSIA and 28 U.S.C. §§ 1441(d) & 1330(a). Once in federal court, the Airbus Defendants filed a motion for dismissal, claiming that:  1) they were immune from suit under the

3

FSIA; and 2) they were not subject to in personam jurisdiction.  In addition, the Airbus Defendants requested dismissal on forum non conveniens grounds.  In response, the plaintiffs filed a motion to remand.

In a published order, the district court ruled that neither Airbus nor its subsidiary, AeF, were instrumentalities of foreign states.[3]  The essence of that ruling by the district court is that, even assuming that the interests of several foreign countries may be combined, ("pooling"), the interest of one of the foreign countries here at issue))Germany))could not be included in this particular pool.  According to the district court, Germany's interests could not be pooled with the interests of other countries because Germany did not own a majority interest in the companies through which Germany held its ownership interest in the Airbus Defendants("tiering").[4]  Absent inclusion of Germany's interest, neither Airbus Defendant had a majority of its shares owned by a foreign state (or states) as required by 28 U.S.C. § 1603(b)(2).

The Airbus Defendants immediately appealed this order of the district court.  In that appeal))Airbus I))we dismissed for lack of appellate jurisdiction.[5]  We concluded that, although denials of motions to dismiss for lack of FSIA immunity generally are appealable despite their interlocutory nature, the district court

---

[3]Linton v. Airbus Industrie, 794 F. Supp. 650 (S.D. Tex. 1992).

[4]Id. at 652-53.

[5]Airbus Industrie v. Linton, No. 92-7564 (5th Cir. Feb. 24, 1993).

4

had failed to rule on the entirety of the motion before it, specifically, on the issues of jurisdiction in personam and forum non conveniens. In remanding, we required the district court to "rule on plaintiffs' motions to remand and defendants' motions to dismiss expeditiously."[6]

Sometime after we remanded to the district court but before it ruled on the remanded issues, the Airbus Defendants entered into joint stipulations with plaintiffs regarding the residency and travel patterns of certain of those plaintiffs. Presumably the Airbus Defendants agreed to enter into these stipulations in an effort to bolster their forum non conveniens argument. Unfortunately for those defendants, though, these stipulations were to have an undesired effect.

When the district court did issue its final order on remand from Airbus I, it addressed))but did not rule upon))the issues remaining in the Airbus Defendants' motion to dismiss, ruling only on the plaintiffs' motion to remand. After noting that it would have dismissed on either in personam jurisdiction or forum non conveniens grounds, the district court observed that there was "a fly in this ointment." That fly had been spawned by the joint stipulations that had the effect of recognizing one of the plaintiffs to be a "stateless" person for jurisdictional purposes, thereby destroying diversity jurisdiction. As that court's earlier order had rejected the FSIA as a basis for "federal question" jurisdiction, the district court concluded that it lacked subject

---

[6]Id.

5

matter jurisdiction altogether, and remanded accordingly, stating: "It is further ORDERED that Plaintiffs' Motion to Remand is GRANTED FOR LACK OF SUBJECT MATTER JURISDICTION . . . ." Presumably due to its lack of jurisdiction, the district court declined to issue any order or ruling on the Airbus Defendants's motion to dismiss.

Encouraged to do so by the district court,[7] the Airbus Defendants timely appealed; and the district court stayed its remand order pending resolution of this appeal.

II

DISCUSSION

A. Jurisdictional Bar of § 1447(d) and the FSIA

Subsection (c) of § 1447 provides in pertinent part that: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[8] Subsection (d) of that same section provides: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise."[9] The Supreme Court has made abundantly clear that subsection (d) operates as an absolute bar to appellate review, stating that § 1447(d) speaks in terms of

---

[7]Despite its remand for lack of subject matter jurisdiction, the district court believed that the FSIA Order was separable and appealable, stating:

> As the Court understands it, an order remanding a case for lack of subject matter jurisdiction is not reviewable on appeal. However, Defendants are entitled to appeal the Court's previous ruling that they are not foreign sovereigns as defined by the Foreign Sovereign Immunities Act ("FSIA").

[8]28 U.S.C. § 1447(c) (emphasis added).

[9]28 U.S.C. § 1447(d).

6

an "unmistakable command" so as to preclude review of remands for grounds stated in § 1447(c) "by appeal, mandamus, or otherwise."[10]

Albeit under distinguishable circumstances, we addressed the relationship between the FSIA and the jurisdictional bar of § 1447(d) in Mobil Corp. v. Abeill General Insurance Co.[11] Mobil had sued several insurance companies in a declaratory judgment action in state court. One of those insurance companies, the Insurance Company of Ireland ("ICI"), claimed that it was an instrumentality of a foreign state under the FSIA and removed to federal court. Presumably because it was engaged in a commercial activity in the United States, ICI made no claim to immunity[12]; ICI nonetheless contended that its status as an instrumentality of a foreign state entitled it to a bench trial in a federal forum under the FSIA and 28 U.S.C. § 1441(d). The district court disagreed, concluding that ICI was not an instrumentality of a foreign state, and consequently remanded to the state court))at least in partSQfor lack of subject matter jurisdiction.[13]

On appeal, ICI argued that the FSIA fell within an exception to § 1447(d). Specifically, it claimed that the decision on FSIA immunity is typically a substantive one that would terminate the

_____

[10]See Gravitt v. Southwestern Bell Tel. Co., 430 U.S. 723 (1977) (per curiam); Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 343 (1976).

[11]984 F.2d 664 (5th Cir. 1993).

[12]See 28 U.S.C. § 1605(a)(2) (providing that immunity does not apply to certain types of commercial activity).

[13]Id. at 665-66.

7

litigation before remand if immunity were granted.  ICI also observed that denials of sovereign immunity are subject to interlocutory appeal.  ICI thus reasoned that unique FSIA concerns justified reviewing the district court's "substantive" decision denying foreign-state status.[14]

In Mobil we flatly rejected ICI's argument.  We first stated that Congress enacted § 1447(d) so that state court actions could proceed without delay if the district court remanded for lack of jurisdictionSQregardless of the correctness of the district court's jurisdictional decision.[15]  We then rejected any attempt to cloak an FSIA jurisdictional call with a substantive mantel, stating that "'[a]lthough the existence of removal jurisdiction may depend on substantive matters, the absence of removal jurisdiction is a procedural defect governed by § 1447(c)."[16]  We concluded with the recognition that even though an unreviewed remand maySQas a practical matterSQwork a deprivation of immunity, such a risk was implicit in Congress's decision not to create in the FSIA an express exception to non-reviewability.[17]

B. Attempts to Avoid the § 1447 Jurisdictional Bar

Against the harsh backdrop of Mobil and § 1447 the Airbus

---

[14]Id. at 666.

[15]Id.

[16]Id. (quoting Hopkins v. Dlohin Titan Int'l, Inc., 976 F.2d 924, 926 (5th Cir. 1992)).

[17]Id.  The court in Mobil also noted that this circuit had refused to create implicit exceptions to § 1447(d) in other contexts. Id.

8

Defendants raise a plethora of imaginative theories to encourage our finding of jurisdiction to hear this appeal. Unfortunately for the Airbus Defendants, however, none of these theories "hang together."

## 1. Separability Doctrine

The Airbus Defendants contend that the district court's ruling on their status under the FSIA is a "separable order" reviewable apart from the decision to remand. They urge that Mobil does not control here becauseSQunlike the defendant in MobilSQthe Airbus Defendants do not seek review of the district court's order of remand; rather, they seek review of the FSIA order itself. Additionally, note the Airbus Defendants, the defendant in Mobil did not claim immunity and likely could not have, given the commercial activity exception,[18] whereas the Airbus Defendants vigorously assert their entitlement to immunitySQwhich typically gives rise to an order that is immediately appealable under the Cohen collateral order doctrine. Although the Airbus Defendants make an appealing argument, we must conclude that the FSIA order is not "separable" and hence not reviewable on appeal.

The notion that certain orders may be reviewed on appeal if such orders are "separable" from the order of remand originated with the Supreme Court's decision in City of Waco v. United States Fidelity & Guaranty Co., 293 U.S. 140 (1934). In City of Waco, Curtis Boggs filed suit in Texas state court against the city of Waco, Texas, and its contractor, Combs & Glade, for damages Boggs

---

[18] See 28 U.S.C. § 1605(2).

9

allegedly caused by a street obstruction.[19]  The city then brought
United States Fidelity Company & Guaranty Company ("Fidelity"),
surety on a bond of Combs & Glade, into the suit by way of a
"cross-action," alleging that Fidelity "was liable under the bond
to pay whatever amount might be adjudged due by the City by reason
of the fault [Combs & Glade]."[20]  Fidelity removed the case to
federal court, and Boggs moved for a variety of relief, including
that the entire case be remanded or that the case against Fidelity
be dismissed and the remainder of the case remanded.[21]

In a single order, the district court denied Boggs' motion to
remand the entire case but granted the motion to dismiss the cross-
action, finding that as to Boggs' cause of action "the Fidelity
Company was an unnecessary and improper party."[22]  Because this
dismissal eliminated diversity jurisdiction, the court remanded the
remainder of the case for lack of subject matter jurisdiction.[23]

The Supreme Court eventually determined that the remand order
did not preclude appellate review of the dismissal order, stating:

> True, no appeal lies from the order of remand; in logic and in
> fact the decree of dismissal preceded that of remand and was
> made by the District Court while it had control of the cause.
> Indisputably, this order is the subject of an appeal; and, if
> not reversed or set aside, is conclusive upon the [city of
> Waco].

---

[19] City of Waco, 293 U.S. at 141.

[20] Id.

[21] Id. at 141-42.

[22] Id. at 142.

[23] Id.

10

The Court also explained that although "a reversal cannot affect the order of remand, . . . it will at least, if the dismissal of the [city's] complaint was erroneous, remit the entire controversy, with the Fidelity Company as a party, to the state court for such further proceedings as may be in accordance with law."[24]

In determining whether an order is "separable" and thus can be afforded appellate review under City of Waco, we have focused on language in the Court's opinion suggesting that an order is "separable" from an order of remand if it precedes that of remand "in logic and in fact" and is "conclusive," i.e., it will have the preclusive effect of being functionally unreviewable in the state court.[25]  Although the district court's FSIA order in the instant case may have preceded the court's order of remand "in logic and in fact," we cannot say that it was "conclusive."  In light of the district court's ultimate conclusion that the entire case had to be

---

[24] Id. at 143-44.

[25] See, e.g., John G. & Marie Stella Kenedy Memorial Found. v. Mauro, 21 F.3d 667, 670 (5th Cir. 1994) (determining that the district court's dismissal of § 1983 claims barred by the Eleventh Amendment before its remand of pendent state law claims was reviewable on appeal); Mitchell v. Carlson, 896 F.2d 128 (5th Cir. 1990) (concluding that the portion of a remand order that resubstituted an individual for the United States as defendant and thus destroyed removal jurisdiction was reviewable on appeal because it was separable from the remand order and final for purposes of appeal); Adams v. Sidney Schafer & Assocs., Inc. (In re Adams), 809 F.2d 1187, 1189 (5th Cir. 1987) (explicitly observing that unless the district court's "reinstatement" order were reviewed on appeal, it would be "functionally unreviewable" by the state court); cf. Soley v. First Nat'l Bank of Commerce, 923 F.2d 406, 419 (5th Cir. 1991) (explaining that district court's determination that the plaintiff's claims were not within the boundaries of ERISA pre-emption was a "jurisdictional finding" under the facts of the case that could be reviewed by the state court on remand and thus was not "separable").

remanded for lack of subject matter jurisdiction, the district court's determination that the FSIA is inapplicable to the Airbus Defendants can be deemed a jurisdictional finding under the facts of this case and, as such, can be reviewed by the state court upon remand.[26] Under City of Waco and the jurisprudence of this circuit, the district court's FSIA order is therefore not "conclusive" upon the Airbus Defendants so as to be "separable" and hence reviewable by this court.

## 2. Non-Preclusive Nature of FSIA Order

In apparent recognition of our inability to review the FSIA order simpliciter, the Airbus Defendants proffer two arguments. First, they suggest that if no other alternative method exists for acquiring jurisdiction, we should exercise our inherent powers to recall our earlier mandate "to prevent injustice." In support of this contention, the Airbus Defendants point out that they have assiduously pursued their claim of immunity, both at trial and on appeal. Yet their appeal in Airbus I was dismissed as premature and their second appeal is being treated as "too late."[27] The Airbus Defendants conclude that such a result effectively deprives

---

[26] Soley, 923 F.2d at 409-410 (indicating that findings made for the purpose of determining federal jurisdiction have no preclusive effect on the state court); see Nutter v. Monongahela Power Co., 4 F.3d 319, 322 (4th Cir. 1993); Baldridge v. Kentucky-Ohio Transp., Inc., 983 F.2d 1341, 1347-50 (6th Cir. 1993); Whitman v. Raley's Inc., 886 F.2d 1177, 1181 (9th Cir. 1989); see also Mobil, 984 F.2d at 666 (rejecting an attempt to cloak an FSIA jurisdictional call with a substantive mantel).

[27]We observe the Airbus Defendant recognized this problem early-on in their Petition for Panel Rehearing presented to the Airbus I panel. Unfortunately, such foresight is of little help here.

12

them of immunity, thereby working an injustice that))given the absence of other options))can only be prevented here by a recall of the mandate. The poignancy of this claim is enhanced by the fact that the Airbus Defendants have, at least facially, presented a strong factual and legal claim of immunity.[28]

Although the Airbus Defendants are correct in asserting that we have authority to recall our mandate "to prevent injustice,"[29]

_____

[28]As noted in Part I, the resolution of the Airbus Defendants' claim of immunity turns on whether through "tiering" a foreign state's ownership interest can be attributed when that foreign state did not own a majority interest in the company that held the ownership interest in Airbus. The district court answered this question in the negative. See Linton, 794 F. Supp. at 653-54. Hence, Germany's interests could not be pooled since Germany failed to own a majority interest in the companies through which Germany held its ownership interest in the Airbus Defendants. The controlling statute, however, erects no explicit bar to the methods by which a foreign state may own an instrumentality, merely requiring that the entity claiming immunity))not its parent))have "a majority of [its] shares or other ownership interest . . . owned by a foreign state or a political subdivision thereof." 28 U.S.C. §1603(b)(2). There is no mention of "voting" or "control" majority, thus equitable or beneficial majority ownership is not expressly prohibited from serving.

We also observe that the district court questioned whether the interests of two or more foreign states could be combined, commenting that "pooling" appears to be foreclosed by the use of the state ("singular") in the FSIA. Linton, 794 F. Supp at 652. This reasoning probably should be examined in light of the rules of statutory construction, e.g., 1 U.S.C. §1 (providing that "words importing the singular include and apply to several persons, parties, or things" unless the context indicates otherwise), and in light of the cases in which the pooling issue has been considered. See, e.g., Le Donne v. Gulf Air, Inc., 700 F. Supp. 1400, 1405-06 (E.D. Va. 1988) (concluding that pooling was allowed); International Ass'n of Machinists & Aerospace Workers v. OPEC, 477 F. Supp. 553, 568-69 (C.D. Cal. 1979) (assuming same), aff'd on other grounds, 649 F.2d 1354 (9th Cir. 1981), cert. denied, 454 U.S. 1163 (1982); Rios v. Marshall, 530 F. Supp. 351, 371 (S.D.N.Y. 1981) (assuming same).

[29]See 5TH CIR. R. 41.2; see also, e.g., Masinter v. Tenneco Oil Co., 934 F.2d 67, 68 (5th Cir. 1991) (stating that a mandate

13

we discern no such injustice here. Significantly, the district court's conclusions regarding the FSIA status of the Airbus Defendants were "jurisdictional" under the facts of this case; they thereby have no preclusive effect on the state courts.[30] Thus, the only consequence of not recalling the mandate here is that the Airbus Defendants must have the merits of their FSIA claims determined by a state court rather than by a federal court. As such, there is no "injustice," for our counterparts in the state system are competent to address the Airbus Defendants' claims of immunity under the FSIA.[31] Accordingly, we decline their invitation to recall the mandate of Airbus I.

The Airbus Defendants argue in the alternative that the district court's failure to rule is itself an appealable denial of immunity. In support of this claim the Airbus Defendants cite Helton v. Clements,[32] in which we held that a failure to rule on a motion for immunity may itself constitute an appealable decision. They point out correctly that Helton is premised on the notion that

_____

may be recalled only to prevent injustice); Canal Ins. Co. v. First Gen. Ins. Co., 901 F.2d 45, 46-47 (5th Cir. 1990) (recalling mandate to modify it so that the district court could consider awarding interest).

[30]See Soley v. First Nat'l Bank of Commerce, 923 F.2d 406, 409 (5th Cir. 1991) (concluding that orders construed as "jurisdictional" and that lead to remand under § 1447 do not have preclusive effects on state courts); Mobil, 984 F.2d at 666 (observing that state courts would be able to reconsider the FSIA issues after remand).

[31]See 28 U.S.C. §§ 1602, 1603-11 (providing statutory grant of concurrent jurisdiction to state courts to resolve FSIA suits).

[32]787 F.2d 1016, 1017 (5th Cir. 1986).

14

a refusal to rule on a motion for immunity effectively denies that immunity by subjecting the defendants to the burdens of trial))the same expense and exposure that foreign sovereign immunity is designed to prevent.[33]  The Airbus Defendants complain that they are indeed suffering here from the very harm that <u>Helton</u> envisioned and sought to prevent.  They insist that, by "refusing" to rule on their motion to dismiss, the district court has subjected them to a remand and the likelihood of trial in state court.

Although we sympathize with the Airbus Defendants's plight, we do not read <u>Helton</u> as applicable to the instant facts.  In <u>Helton</u>, the refusal to rule subjected the defendants to the burdens of trial, thereby effectively negating the defendant's immunity.  As noted here, however, the refusal to rule))even if it can be properly characterized as such[34]))merely means that the Airbus Defendants's claims to immunity will be considered by the state courts instead of by a federal appellate court.  Thus, unlike the

---

[33]<u>Id.</u> at 1017.

[34]The district court refused to rule on the motion to dismiss on remand because it concluded that it lacked subject matter jurisdiction.  Refusing to rule under these circumstances was proper.  <u>See</u>, <u>e.g.</u>, <u>In re Carter</u>, 618 F.2d at 1098.  Thus, the only valid complaint left is that the district court refused to rule before the first appeal.  But unlike the court in <u>Helton</u>))
which explicitly refused to rule on the immunity issue))the district court in the instant case did in fact make such a ruling; it merely did so in a form that was presumed to be unappealable owing to that court's failure to rule on the other grounds raised in the motion to dismiss.  Because we conclude that the Airbus Defendants's are not precluded from reurging their immunity defense in state court, we need not, and therefore do not, decide whether a ruling on immunity in a form that is deemed unappealable is itself a "refusal to rule" subject to appeal.

defendants in <u>Helton</u>, the Airbus Defendants have not been effectively denied their claimed immunity; they simply must have that issue resolved in a different forum))one which undoubtedly consider federal jurisprudence to be instructive, albeit non-binding.

### 3. Mandamus and § 1447

The Airbus Defendants also contend that 1) the district court remand was based on a "post-removal event"SQthe citizenship stipulationSQ2) such remand meant that the case was originally "properly removable," and 3) the remand for this post-removal event was thus not based on a ground enumerated in § 1447(c). Therefore, conclude the Airbus Defendants, this remand is reviewable by mandamus.[35]

We find this argument intriguing yet unpersuasive. Initially, we note that mandamus adds nothing to the authority of this court to review jurisdictional remands under § 1447. When such a remand order is not reviewable by appeal it is not reviewable "otherwise."[36]

Turning to the merits of the Airbus Defendant's contention, we

---

[35]The Airbus Defendants also argue that this stipulation applied to only one of the two cases that had been consolidated here. Hence, the order remanding both cases for lack of subject matter jurisdiction was in error. Such an argument misapprehends the nature of the bar in § 1447: If a district court remands for lack of subject matter jurisdiction, then that remand order may not be reviewed even if it were clearly erroneous. <u>E.g.</u>, <u>Tillman</u>, 929 F.2d at 1028.

[36]<u>See</u> 28 U.S.C. § 1447(d); <u>Gravitt</u>, 430 U.S. at 723 (holding that we cannot use mandamus to review a remand order that would not be reviewable by direct appeal).

16

observe that))even if this stipulation can properly be considered a "post-removal" event[37]))we have twice before concluded that jurisdictional remands premised on post-removal events are not reviewable. In Tillman v. CSX Transport,[38] the district court remanded for lack of subject matter jurisdiction based on a post-removal event))the joinder of a state agency. Despite the fact that this decision was clearly wrong))and that it was based on a post-removal event))we held that it was nonetheless non-reviewable because the remand was granted on § 1447(c) jurisdictional grounds.[39] Tillman merely followed our prior precedent, In re Merrimack Mutual Fire Insurance Co.,[40] in which we stated that such remands are not reviewable in light of Supreme Court precedent and the statutory policy of avoiding substantial delays caused by

---

[37]The plaintiffs argue that no post-removal event is involved here, as the stipulation merely related to the plaintiffs status at the time of removal. Cf. Asociacion Nacional de Pescadores v. Dow Quimica, 988 F.2d 559, 565 (5th Cir. 1993) (concluding that affidavit which merely clarified the amount in controversy at time of removal was not a post-removal event). The Airbus Defendants claim that the stipulation itself is the post-removal event; according to them the stipulation did not relate back to the plaintiffs status at the time of removal because the district court had previously held that the plaintiffs' petition estopped them from contesting that status. Cf. St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1938) (events occurring subsequent to removal generally do not oust a district court of jurisdiction). As we conclude that this stipulation is not reviewable even if it were classified as a post-removal event, we need not decide which of the foregoing characterizations is more apt.

[38]929 F.2d 1023, 1025 (5th Cir.), cert. denied, 112 S.Ct. 176 (1991).

[39]Id. at 1028-29.

[40]587 F.2d 642, 647-49 (5th Cir. 1978).

17

appellate review.

Finally, we conclude that the attempt by the Airbus Defendants to distinguish cases such as Tillman simply does not work.[41]  The Airbus Defendants argue that Tillman involved the joinder of a party, one of the grounds expressly enumerated in § 1447(e).  Accordingly, insist the Airbus Defendants, as this is a ground enumerated in subsection (e) of § 1447, it falls within the bar contained in subsection (d) of that same section.  The instant case is thus different, they urge, because it involves a remand based on a non-enumerated groundSQthe loss of diversity jurisdiction caused by a change in citizenship status.

But our cases, such as Tillman, are not based on any purported "enumerated-nonenumerated" distinction between the various grounds for the lack of jurisdiction.  Rather, these cases are premised on the concept that when the district court declares that it is remanding for lack of subject matter jurisdiction, its remand order may not be reviewed on appeal, no matter how erroneous.  The "operative fact" is the ultimate one))the district court's conclusion that it no longer has jurisdiction.  Efforts to dissect the reasoning of that conclusion so as to find appellate jurisdiction are little more than veiled attempts to investigate

_____

[41]The Airbus Defendants also cite recent precedent in the Sixth Circuit and the Seventh Circuit that authorizes review of remands based on post-removal events.  See Baldridge v. Kentucky-Ohio Transp., 983 F.2d 1341, 1348-49 (6th Cir. 1993);  In re Shell Oil Co., 966 F.2d 1130, 1132 (7th Cir. 1992).  Airbus and AeF do not argue, however, that these cases recognize any groundsSQsuch as a favorable statutory changeSQthat would negate the precedential force of Tillman and Merrimack.

18

indirectly the correctness of the district court's conclusion. Our concluding statement in Tillman regarding the non-reviewability of such error is instructive:

> Consequently, having been erroneously remanded on § 1447(c) jurisdictional grounds, this case is irretrievably beyond anything we can do about it. We cannot review it by any means. We emphasize our complete inability to do anything about the trial court's joinder order, whether interlocutory or final, because what we cannot review we cannot by some juridical self-help get back to federal court.[42]

III

CONCLUSION

> I call them the Wards in Jarndyce. They are caged up with all the others. With Hope, Joy, Youth, Peace, Rest, Life, Dust, Ashes, Waste, Want, Ruin, Despair, Madness, Death, Cunning, Folly, Words, Wigs, Rags, Sheepskin, Plunder, Precedent, Jargon, Gammon, and Spinach![43]

Like the poor Wards in Jarndyce, the Airbus Defendants have searched in vain for resolution of their claim. We take comfort, though, in the fact that, unlike the Wards in Jarndyce))who were forever consigned to wander about in the fog of Chancery court))the Airbus Defendants will be able to have the merits of their claim of FSIA immunity heard, albeit in state court. We are confident that there the FSIA immunity claim and its central issues of pooling and tiering will receive the full, objective and learned consideration to which they are clearly entitled.

As we conclude that, under the peculiar circumstances of this matter, the district court's remand for lack of subject matter

---

[42]Tillman, 929 F.2d at 1029.

[43]CHARLES DICKENS, BLEAK HOUSE, ch. 60 (1853).

19

jurisdiction deprives us of jurisdiction to review the instant case, the motions of the Airbus Defendants that we recall the mandate in Number 92-7564 and that we issue a writ of mandamus are denied; and the motion of appellees that this appeal be dismissed is granted.

DISMISSED.